**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.    **LOGAN GRINSTEAD,**         ) | |
| ) | |
|        **Plaintiff,**         ) | |
| ) | |
| **v.**         ) | |
| ) | |
| 1.    **CRAIG BILLINGS, in his individual** ) | |
| **capacity and official capacity as a Murray** ) | |
| **County Deputy Sheriff, and**     ) | |
| ) | |
| 2.    **C. DARRIN ROGERS, in his individual** ) | |
| **capacity,**         ) | **Case No. CIV-12-162-JHP** |
| ) | |
| 3.    **DARREL RICHARDSON, in his official** ) | |
| **capacity as the currently elected Sheriff of** ) | |
| **Murray County,**     ) | |
| ) | |
| 4.    **BOARD OF COUNTY**     ) | |
| **COMMISSIONERS OF MURRAY COUNTY,** ) | |
| **OKLAHOMA,**     ) | |
| ) | |
| **Defendants.**     ) | |

<u>**OPINION AND ORDER**</u>

Before the Court are Defendant Murray County Board of County Commissioners' (the "Board") Motion for Summary Judgment [Doc. No. 75]; Defendant Darrel Richardson's Motion for Summary Judgment [Doc. No. 76]; and Defendant Darin Rogers' Motion for Summary Judgment [Doc. No. 79]. After consideration of the briefs, and for the reasons below, the Board's Motion for Summary Judgment [Doc. No. 75] is **GRANTED in part, DENIED in part**; Defendant Darrel Richardson's Motion for Summary Judgment [Doc. No. 76] is **GRANTED**; and Defendant Darin Rogers' Motion for Summary Judgment [Doc. No. 79] is **GRANTED**.

# BACKGROUND

On the evening of October 8, 2011, Plaintiff was arrested for public intoxication by the Sulphur Police Department and transported to the Murray County Jail. During the booking process, Plaintiff made an offensive comment to Defendant Billings, a jail employee on duty that evening.[1] In response, Billings assaulted Plaintiff, wrapping his hands around Plaintiff's throat, choking Plaintiff, and repeatedly knocking Plaintiff's head against the concrete floor. Plaintiff was subsequently transported to the Arbuckle Memorial Hospital, where he received medical care for the injuries sustained during the assault.

As a result of the October 8, 2011 assault, Billings' employment was immediately suspended by Defendant Sheriff Darin Rogers, who was the Sheriff of Murray County at the time of the assault.[2] On October 10, 2011, Sheriff Rogers terminated Billings' employment due to his conduct relating to Plaintiff's assault. In January of 2013, Billings was charged with, and subsequently pleaded guilty to, the crime of depriving Plaintiff of his civil rights in violation of 18 U.S.C. § 242.

Prior to the October 8, 2011 incident involving Plaintiff, Sheriff Rogers was aware of three allegations of unnecessary or excessive force used by Billings. The first of these complaints involved allegations that Billings instructed an inmate to assault another inmate. The FBI investigated this allegation and cleared Billings of any wrongdoing.[3] Another complaint, received around July 3, 2009, involved Billings entering a residence of Christina and Jose

---

[1] Plaintiff made reference to a 20-year-old allegation that Billings had abused a nine-month-old girl who was under the babysitting care of Billings' mother.

[2] Defendant Rogers took office as Murray County Sheriff on December 31, 2003, and held that position until December 31, 2012. Defendant Rogers was by replaced by Defendant Darrel Richardson on January 1, 2014.

[3] Plaintiff disputes whether the FBI actually cleared Billings of any wrongdoing, because it is supported only by the testimony of Defendant Rogers. [Doc. No. 86, 18.] This is insufficient to create a genuine dispute as to this fact.

Mascorro after Christina Mascorro allegedly assaulted Billings outside of the residence.[4] The Mascorro incident resulted in a lawsuit that was settled out of Court. The last allegation of unnecessary force, received around June 13, 2011, arose from Billings' deployment of a taser on Bobby Summerlin, after Billings and another deputy observed that Summerlin smelled of marijuana. The Summerline incident resulted in a lawsuit that was dismissed by Summerlin without settlement. With regard to all of these incidents, Sheriff Rogers spoke with Billings, reviewed the reports, and ultimately found Billings was not at fault.[5] Sheriff Rogers further testified that, based on the information he had at the time, he did not believe Billings was a danger to the public.

In the two years preceding Plaintiff's assault, Billings had received hundreds of hours of law enforcement related training. At all times relevant to this litigation, the State of Oklahoma required law enforcement officers, such as Billings, to complete a minimum of 25 hours of continuing law enforcement training, including 2 hours on mental health issues, accredited or provided by CLEET. In the years leading up to October 8, 2011, Billings obtained many hours of annual, continuing legal education and training over and above the amount required by the State of Oklahoma.

## <u>DISCUSSION</u>

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

---

[4] Plaintiff disputes the facts surrounding the Mascorro incident, because "they are based upon a self-serving affidavit produced on the part of Craig Billings while he was the primary Defendant" in a lawsuit. [Doc. No. 86, 18]. This is insufficient to create a genuine dispute as to the facts of the Mascorro incident.

[5] Sheriff Rogers was also aware of another incident where Billings was assaulted while he was off-duty. Although he was aware of the incident, Sheriff Rogers did not receive a complaint regarding the incident.

Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249. Credibility issues fall outside the scope of summary judgment. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing *Anderson*, 477 U.S. at 255); *see also, Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments.").

**A. Defendant Board's Motion for Summary Judgment**

**1. Assault and Battery Claims**

The Board contends that it is entitled to summary judgment on Plaintiff's assault and battery claims. Pursuant to the Oklahoma Governmental Tort Claims Act (the GTCA), Okla. Stat. tit. 51, §§ 151 *et seq.*, the state and its political subdivisions are not liable for the actions of employees acting outside the scope of their employment. *Id.* at § 153(A). The GTCA defines "scope of employment" to mean "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority ... ." *Id.* at § 152(11).

The Board argues that, because the assault and battery claims asserted by Plaintiff against it are intentional torts, Billings could not have been acting in good faith when they were allegedly committed. Under Oklahoma law, municipalities may be liable for certain intentional torts committed by employees acting within the scope of their employment. *See Nail v. City of Henryetta*, 911 P.2d 914, 917 n. 8 (Okla. 1996). However, a government entity is immune from intentional tort claims committed by employees acting in bad faith. *Id.*

Under Oklahoma law, the torts of assault and battery impose liability only where an actor intends to cause a harmful or offensive contact. Restatement (Second) of Torts §§ 21, 13 (1965). As such, courts have held that "it is clear that [these torts] cannot be committed in good faith." *Craig v. City of Hobart*, CIV-09-0053-C, 2010 WL 680857, *4 (W.D. Okla. Feb. 24, 2010); *Burns v. Holcombe*, CIV-11-240-JHP, 2013 WL 3154120, *15 (E.D. Okla. June 21, 2013). Accordingly, the Board is entitled to summary judgment on Plaintiff's assault and battery claims.[6]

## 2. Okla. Const. art 2, § 30 Claim

Plaintiff also asserts a claim based on *Bosh v. Cherokee Cnty. Bldg. Auth.*, 305 P.3d 994 (Okla. 2013). In *Bosh,* the Oklahoma Supreme Court held:

> The Okla. Const. art 2, § 30 provides a private cause of action for excessive force, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act, 51 O.S.2011 §§ 151 et seq. This action is recognized retrospectively. The common law theory of *respondeat superior* applies to municipal liability under such an action to determine when an employee of a municipality uses excessive force within the scope of employment.

---

[6] To the extent Plaintiff seeks to assert an "excessive force" tort claim, the Court finds any such claim subject to dismissal, because it is undisputed that Plaintiff's assault did not occur until after he was placed under arrest. *See Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dept.*, 230 P.3d 869, 876 (Okla. 2010) ("If a tort is committed in the process of making an arrest, § 155(4) does not provide immunity from suit to the officer's governmental employer for the resulting damages.").

305 P.3d at 1004.  The Board argues that it cannot be held liable for the actions of Billings under a theory of *respondeat superior* because Billings was not acting within the scope of his employment at this time he assaulted Plaintiff.

Under the doctrine of *respondeat superior*, an employer is liable for the "willful torts of an employee acting within the scope of employment in furtherance of assigned duties."  *MTG Guarnieri Mfg ., Inc. v. Cloutare*, 239 P.3d 202, 214 (Okla. Civ. App. 2010) (citing *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158 (Okla. 2008)).  *Respondeat superior* imposes vicarious liability on an employer for the negligence of an employee.  *Sisk v. J.B. Hunt Transp., Inc.*, 81 P.3d 55, 58 (Okla. 2003).   "This rule rests on the premise that, when exercising delegated authority, the employee stands in complete control of the employer."  *Nelson v. Pollay*, 916 P.2d 1369, 1374 n. 23 (Okla. 1996).  "An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer."  *Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 867 P.2d 1241, 1245 (Okla. 1993); *see also Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1163 (Okla. 2009) ("Under the theory of *respondeat superior*, one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business.").  As a general rule, "[w]hether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged."  *Tuffy's*, 212 P.3d at 1167.  In *Bosh*, the Oklahoma Supreme Court held that these same principles must be applied in determining whether municipal corporations may be held liable for violations of Okla. Const. art 2, § 20.  *Bosh*, 305 P.3d at 1004.

The Board argues that it cannot be held liable for the actions of Billings, because Billings was acting outside the scope of his employment when he assaulted Plaintiff on October 9, 2011. Specifically, the Board contends that, although Billings was on duty at the time he assaulted Plaintiff, he was not actively participating in booking Plaintiff into the jail. However, it is undisputed that Billings was on duty and actively engaged in conversation with Plaintiff when he assaulted Plaintiff at the Murray County Jail. Under the circumstances, the Court finds the evidence sufficient to allow a jury to find that Billings was acting within the scope of his employment. Accordingly, Plaintiff's Okla. Const. art 2, § 30 claim is not appropriate for summary adjudication.

### 3. Punitive Damages

The Court finds that because the issue of punitive damages pertains only to available relief rather than impacting the validity of an entire claim or defense, it is premature to decide the availability of punitive damages at this time. Accordingly, the Board's motion will be denied as to the punitive damages issue.

### B. Defendant Darrell Richardson's Motion for Summary Judgment

Plaintiff asserts a claim against Sheriff Richardson in his official capacity. Specifically, Plaintiff argues that then-acting Sheriff Rogers failed to conduct meaningful investigations into allegations that Defendant Billings used excessive force in violation of the constitution and administer adequate discipline thereafter. [Doc. No. 86, 25].[7]

---

[7] The Court notes that Plaintiff conceded his claim for failure to train claim. [Doc. No. 86, 25]. Furthermore, to the extent Plaintiff attempts to argue the existence of a policy or custom of using excessive force, the Court finds these claims unsupported by the evidence, even when viewed in a light most favorable to Plaintiff. Specifically, three separate, unrelated, inapposite allegations of excessive force over a period of many years against one deputy sheriff is insufficient to establish a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1991) (internal citations and quotation marks omitted).

Claims against a government officer in his official capacity are actually claims against the government entity for which the officer works. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer–Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986)). "[A municipality] cannot be held liable for the acts of its employees on a theory of *respondeat superior*." *Id.* at 1188. Therefore, in order to prevail against Sheriff Richardson in his official capacity, Plaintiff must establish both (1) a municipal policy or custom, and (2) a direct causal link between the policy or custom and the alleged injury. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer–Hoelter,* 602 F.3d at 1189–90 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989)) (internal quotation marks omitted).

Municipal liability based on a failure to supervise is based on the idea that a "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 131 S.Ct. 1350, 1360, (2011) (internal quotation marks omitted). Consistent with this principle, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, J.) (internal quotation marks omitted). As such, a municipality may be held liable for "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer–Hoelter*, 602 F.3d at 1190 (citations omitted).

The Tenth Circuit has explained the evidence required to establish deliberate indifference for this purpose:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)); *see also Bryson,* 627 F.3d at 789 ("the City cannot be held liable for its failure to supervise ... unless the City's policymakers 'can reasonably be said to have been deliberately indifferent to the need' for further training or supervision").

Sheriff Richardson argues that Plaintiff has failed to present evidence sufficient to support a finding that Sheriff Rogers, the acting Murray County Sheriff at the time of Plaintiff's assault, was deliberately indifference to the need for further supervision of Billings. Plaintiff counters that Sheriff Rogers' failure to adequately investigate and respond to allegations that Billings used excessive force is sufficient to demonstrate deliberate indifference to the need for additional supervision. After consideration of the record, the Court finds that Plaintiff has failed to produce facts sufficient to support a finding of deliberate indifference.

Although there were several complaints regarding Billings' conduct over a period of several years, it is undisputed that Sheriff Rogers conducted some measure of investigation and determined that Billings acted appropriately. While not disputing that Sheriff Rogers conducted investigations into the alleged constitutional violations, Plaintiff argues that Sheriff Rogers' investigations were inadequate, in part, because he relied primarily on the version of events put forth by Billings. To be sure, with the benefit of hindsight, it could be argued that Sheriff Rogers should have questioned additional witnesses or sought other evidence to corroborate Billings version of events; however, that Sheriff Rogers could have conducted a more thorough investigation does not equate to deliberate indifference. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) ("[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did."). Indeed, "[d]eliberate indifference is more than mere negligence or even gross negligence." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (citing *City of Canton*, 489 U.S. at 388). As such, the Court finds the evidence insufficient as a matter of law to establish that Sheriff Rogers acted with deliberate indifference. Accordingly, Sheriff Richardson's Motion for Summary Judgment must be granted.

**C.  Defendant Darin Rogers' Motion for Summary Judgment**

Plaintiff argues that Sheriff Rogers is subject to individual liability under § 1983 based on his alleged failure to conduct meaningful investigations into allegations of excessive force against Billings and take appropriate disciplinary action thereafter.  To establish § 1983 liability of a defendant-supervisor, a plaintiff must demonstrate that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

The state of mind required for supervisory liability is the same as that for the underlying constitutional offense.  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("the *mens rea* required of [a supervisor] to be held liable ... can be no less than the *mens rea* required of anyone else.").  Because Billings' assault on Plaintiff would be considered a deprivation of his substantive due process rights, the applicable state of mind for such a violation is "deliberate indifference." *Green v. Post*, 574 F.3d 1294, 1301 (10th Cir. 2009); *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).  As explained above, the Court finds the evidence insufficient as a matter of law to establish that Sheriff Rogers acted with deliberate indifference.  Accordingly, Sheriff Roger's Motion for Summary judgment must be granted.

## CONCLUSION

For the reasons cited above, the Board's Motion for Summary Judgment [Doc. No. 75] is **GRANTED in part, DENIED in part**; Defendant Darrel Richardson's Motion for Summary

Judgment [Doc. No. 76] is **GRANTED**; and Defendant Darin Rogers' Motion for Summary

Judgment [Doc. No. 79] is **GRANTED**.

      **IT IS SO ORDERED** this 14th day of April, 2014.


James H. Payne
United States District Judge
Eastern District of Oklahoma